IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DANIEL JAMES SIXTA,               §
TDCJ-CID NO. 1143232,             §
                                  §
              Petitioner,         §
                                  §
v.                                §
                                  §       CIVIL ACTION NO. H-07-0118
NATHANIEL QUARTERMAN, Director,   §
Texas Department of Criminal      §
Justice, Correctional             §
Institutions Division,            §
                                  §
              Respondent.         §

## MEMORANDUM OPINION AND ORDER

Petitioner, Daniel James Sixta, a person in custody, filed a
Petition for a Writ of Habeas Corpus with this court on January 10,
2007 (Docket Entry No. 1). Respondent, Nathaniel Quarterman, filed
an Answer with Brief in Support on May 16, 2007 (Docket Entry
No. 17). In its September 19, 2007, Memorandum Opinion and Order
(Docket Entry No. 30) the court announced that it would construe
respondent's Answer as a motion for summary judgment, and ordered
petitioner to respond within twenty days. Petitioner filed his
Response and Objections to Respondent Quarterman's Answer with
Brief in Support on October 15, 2007 (Docket Entry No. 32), along
with several other motions (Docket Entry No. 31). For the reasons
explained below, the court will grant respondent's motion for
summary judgment and deny petitioner's pending motions.

## I.  <u>Factual and Procedural Background</u>

Petitioner was indicted in Harris County, Texas, in Cause No. 0923949 for intoxication manslaughter.[1]  On December 12, 2002, Sixta was found guilty.[2]  The next day he was sentenced to twenty years in prison.[3]  The evidence at trial established that petitioner began drinking around 3:00 p.m. on February 21, 2002. Petitioner's long-time friend, Carolyn Messen, testified that although she did not witness petitioner drinking, given her familiarity with petitioner and his drinking habits, she knew petitioner had been drinking based solely on his appearance. Messen testified that petitioner continued drinking well into the night.  She also testified that just prior to the accident petitioner was driving fast and aggressively, and that she believed petitioner was physically and mentally impaired by the alcohol he had consumed that day.[4]

Several other eyewitnesses corroborated Messen's testimony. Kenneth Bradshaw witnessed the accident and estimated that petitioner was driving approximately 55-60 mph just prior to the accident.[5]  Officer Pearson, the state's accident reconstruction

---

[1]<u>Ex parte Sixta</u>, No. 60,547-03, p. 109.

[2]<u>Id.</u> at 116.

[3]<u>Id.</u>

[4]Reporter's Record, Docket Entry No. 18, Vol. 4 pp. 64-67, 69-70, 77.

[5]<u>Id.</u> at 46-47.

expert, estimated that petitioner was traveling at approximately 61 mph before the accident and at 52 mph just prior to impact.[6]  The posted limit on the road on which petitioner was traveling was 45 mph.[7]

Bradshaw also testified that he smelled alcohol when he approached the petitioner, though he admitted that he was not sure that the odor came from petitioner.[8]  Karen Heiman, the nurse who drew petitioner's blood for a sample, testified that she smelled alcohol when near petitioner, but acknowledged that petitioner seemed coherent and was cooperative.[9]  Officer Pearson testified that he believed petitioner was intoxicated because petitioner failed a field sobriety test, known as the nystagmus test, which Officer Pearson administered on site.[10]

The analysis of petitioner's blood sample revealed that petitioner had a blood-alcohol content of .22, nearly three times the legal limit.[11]  Officer Pearson testified that based on his observations of petitioner, petitioner's intoxicated condition impaired his ability to safely drive his vehicle.[12]

---

[6]Id. at 170, 172.

[7]Id. at 165.

[8]Id. at 45.

[9]Id. at 107.

[10]Id. at 141-47.

[11]Reporter's Record, Docket Entry No. 18, Vol. 5 pp. 112-13.

[12]Id. at 39.

-3-

Although the trial court had granted petitioner $750 to obtain defense experts, no expert was obtained.  However, through cross-examination, petitioner's counsel was able to rebut some of the evidence presented against petitioner.   Petitioner's counsel exposed contradictions in Messen's testimony that petitioner was impaired on the night of the accident.[13]  He undermined Officer Pearson's testimony concerning the accuracy of the field sobriety test by pointing to the conditions under which Officer Pearson administered the field sobriety test.[14]  He also elicited testimony concerning the fault of Martha Alford, the driver of the other car involved in the collision.[15]  The jury found petitioner guilty of killing Ms. Coble, and sentenced him to twenty years in prison.

Petitioner appealed his conviction to the Texas Court of Appeals.[16]  Six of petitioner's claims concerned the state trial court's decision to require the petitioner to plead guilty to two prior misdemeanor convictions in the presence of the jury.[17]  The Texas Court of Appeals refused to consider these six claims, citing petitioner's failure to observe the contemporaneous objection

---

[13]Reporter's Record, Docket Entry No. 18, Vol. 4 pp. 80, 85.

[14]Reporter's Record, Docket Entry No. 18, Vol. 5 pp. 6-8.

[15]See, e.g., Reporter's Record, Docket Entry No. 18, Vol. 4 pp. 33, 48-49, 94; Vol. 5 pp. 28-30.

[16]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 3.

[17]Ex parte Sixta, Application No. 60,547-03, p. 51.

-4-

rule.[18]   The Texas Court of Criminal Appeals denied petitioner's petition for discretionary review.[19]

Petitioner then filed a state application for a writ of habeas corpus.   In that application he included additional grounds for relief:  ineffective assistance of counsel, "false indictment," prosecutorial misconduct, and "unconstitutional failure to disclose evidence favorable to the defendant."[20]   The trial court required petitioner's trial counsel to submit affidavits responding to petitioner's allegations.[21]   Petitioner's counsel submitted two affidavits that explained his failure to consult with an expert during the course of petitioner's trial, the extent of the investigation he conducted before petitioner's trial, what advice he had given petitioner concerning the state's plea offer, whether he advised petitioner of his rights, and to what extent he was aware of petitioner's mental and physical state prior to trial.[22]

The trial court found the affidavits from petitioner's counsel true and credible, and concluded that counsel's conduct was not ineffective.[23]   Accordingly, the trial court recommended that

---

[18]Id. at 55.

[19]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 3.

[20]Ex parte Sixta, Application No. 60,547-03, pp. 7-8.

[21]See id. at 73.

[22]See id., Affidavit of Michael E. Barrow, pp. 79-83; Ex parte Sixta, Supplemental Application No. 60,547-03, pp. 11-13.

[23]Ex parte Sixta, Supplemental Application No. 60,547-03, pp. 16-17.

petitioner's state habeas application be denied.[24]  The Texas Court of Criminal Appeals denied petitioner's application without written order on December 13, 2006.[25]

On January 10, 2007, petitioner filed a petition for a writ of habeas corpus in this court.[26]  All of the claims petitioner raised in his federal petition were included either in the direct appeal of his conviction or in his state habeas application.[27]

## II.  **Standards of Review**

Respondent contends that he is entitled to a judgment because, based on the state court records, petitioner has failed to meet his burden under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[28]  Rule 56 of the Federal Rules of Civil Procedure

---

[24]See id.

[25]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 4.

[26]Id. at 1.

[27]See Respondent Quarterman's Answer with Brief in Support, Docket Entry No. 17, p. 4 (conceding that petitioner exhausted all claims raised in his federal petition).

[28]Because petitioner filed his habeas petition after April 24, 1996, the AEDPA applies.  Lindh v. Murphy, 117 S. Ct. 2059 (1997). The court rejects any argument from petitioner that by summarily disposing of his state claims the state habeas court failed to adjudicate his claims "on the merits" as 28 U.S.C. § 2254(d) requires.  See, e.g., Petitioner's Response and Objections to Respondent Quarterman's Answer with Brief in Support, Docket Entry No. 32, pp. 45-46.  The Texas Court of Criminal Appeals denied petitioner's state habeas application "without written order."  See State Court Records, Docket Entry No. 18, Action Taken on
(continued...)

governs motions for summary judgment and applies to habeas corpus cases, see Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000), but only to the extent that the rule is consistent with the AEDPA, see Rule 11 of Rules Governing § 2254 Cases.   Under Rule 56 summary judgment is appropriate only if the pleadings and parties' submissions demonstrate that there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).   In habeas cases, however, the court cannot construe all facts in the light most favorable to the nonmoving party.   See Woods v. Cockrell, 307 F.3d 353, 356–57 (5th Cir. 2002).   Instead, the AEDPA requires the court to presume as true all facts found by the state court until the petitioner provides clear and convincing evidence to rebut that presumption. Id. (citations omitted); 28 U.S.C. § 2254(e)(1).

To meet his burden under the AEDPA petitioner must first establish that he is entitled to relief on the merits of his claims.   Orman v. Cain, 228 F.3d 616, 619 (5th Cir. 2000).   Once this showing is made, the court then determines whether the state courts' adjudication of those claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or was

---

[28](...continued)
December 13, 2006, in Ex parte Sixta, Application No. 60,547-03. Under Texas law summary denial of a state habeas application is an "adjudicat[ion] on the merits" within the meaning of 28 U.S.C. § 2254(d).   Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000).

"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Miller v. Dretke, 420 F.3d 356, 361-66 (5th Cir. 2005) (examining petitioner's claim on the merits before examining if the state habeas court's decision was unreasonable); Neal v. Puckett, 286 F.3d 230, 236-47 (5th Cir. 2002) (evaluating the merits of petitioner's ineffective assistance of counsel claim before concluding that although incorrect, the state court's decision was not an unreasonable application of federal law). However, before the court may reach the merits of petitioner's claims, it must be sure that those claims are not procedurally barred. See Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003).

Petitioner raised several claims in his petition. Petitioner abandoned two of those claims in his response.[29] Four of the remaining claims are barred from consideration under the procedural default rule, and petitioner has failed to establish that he is entitled to relief under the remaining claims. Therefore, the court will grant respondent's motion for summary judgment.

### III.  **Procedural Default**

A petitioner's claims are procedurally defaulted "[i]f a state court clearly and expressly base[d] its dismissal of a prisoner's claim on a state procedural rule, and that procedure provide[d] an

---

[29]Petitioner's Response and Objections to Respondent Quarterman's Answer with Brief in Support, Docket Entry No. 32, p. 44.

independent and adequate ground for the dismissal[.]" <u>Nobles v. Johnson</u>, 127 F.3d 409, 420 (5th Cir. 2003).  The contemporaneous objection rule is an independent and adequate ground for dismissal. <u>Fisher v. Texas</u>, 169 F.3d 295, 300-01 (5th Cir. 1999).  The procedural bar may be overcome, however, if petitioner can prove "'cause for the procedural default and actual prejudice . . . .'" <u>Pickney</u>, 337 F.3d at 545 (quoting <u>Smith v. Johnson</u>, 216 F.3d 521, 524 (5th Cir. 2000)).

In grounds one, two, three, and five petitioner alleges that he was denied a fair trial because the trial court required him to admit in the jury's presence that he had two prior DWI convictions.[30]  These four grounds were among the six claims that the Texas Court of Appeals held were barred on appeal under the contemporaneous objection rule.[31]  Petitioner contends his claims may nonetheless be heard because his attorney's failure to object to the trial court's error constituted cause and actual prejudice.[32]

Generally, an attorney's failure to object does not qualify as "cause" under the cause and prejudice test.  <u>Coleman v. Thompson</u>, 111 S. Ct. 2546, 2566-67 (1991).  Failure to object qualifies as "cause" only if the failure to object amounts to the ineffective

---

[30]Petition fo a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 7, 16.

[31]<u>See</u> <u>Ex parte Sixta</u>, Application No. 60,547-03, p. 55.

[32]Petitioner's Response and Objections to Respondent Quarterman's Answer with Brief in Support, Docket Entry No. 32, pp. 13-14.

assistance of counsel.  Id. at 2567.  Furthermore, to prove "actual prejudice," petitioner must prove that "'but for the error, he might not have been convicted.'"  Pickney, 337 F.3d at 545 (quoting United States v. Guerra, 94 F.3d 989, 994 (5th Cir. 1996)).

The court need not decide whether the failure of petitioner's attorney to object constituted cause because even if it did, petitioner has not proved prejudice.  Based on the blood sample establishing petitioner's blood-alcohol level at nearly triple the legal limit[33] and the several witnesses who testified that petitioner was intoxicated and impaired on the night of the accident,[34] the court concludes that petitioner would have been convicted regardless of the trial court's alleged error.  Moreover, the jury would have learned of petitioner's two prior DWI convictions in any event because Texas law permitted the trial court to include the two prior convictions in the jury charge.  See Hollen v. State, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003) (holding that in mentioning two prior DWI offenses in the jury charge, the trial court committed no error).

## IV.  **Petitioner's Remaining Claims**

In addition to his procedurally defaulted claims, petitioner has alleged several ineffective-assistance-of-counsel claims and several claims of prosecutorial misconduct.

---

[33]Reporter's Record, Docket Entry No. 18, Vol. 5 pp. 112-13.

[34]Reporter's Record, Docket Entry No. 18, Vol. 4 pp. 46-47, 64-67, 69-70, 77, 107.

## A.   Petitioner's Ineffectiveness of Counsel Claims

To establish that his counsel was ineffective petitioner "must demonstrate both deficient performance by his counsel and prejudice resulting from that deficiency." Emery v. Johnson, 139 F.3d 191, 196 (5th Cir. 1997).   To establish deficient performance "petitioner must demonstrate that [his] counsel's representation fell below an objective standard of reasonableness." Miller, 420 F.3d at 361 (internal quotations omitted).   When examining counsel's performance, the court "must be highly deferential, and . . . must presume that counsel's conduct falls within the wide range of reasonable professional assistance."   Id.   To prove prejudice petitioner must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different."   Strickland v. Washington, 104 S. Ct. 2052, 2068 (1984).   A claim for ineffective assistance of counsel can be disposed of "for either reasonable performance of counsel or lack of prejudice, without addressing the other." Murray, 736 F.2d at 282.   Petitioner asserts that his trial counsel was ineffective because he failed to (1) obtain expert witnesses to rebut the state's expert witnesses, (2) object to the admission of the state's blood-alcohol analysis,[35] (3) adequately investigate petitioner's case and prepare for trial,[36] (4) object to the

---

[35]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 8, 14.

[36]Id. at 14-15.

admission of evidence at sentencing regarding petitioner's involvement in a prior fatal accident,[37] and (5) competently advise petitioner concerning the state's plea bargain offer.[38]

1.   <u>Failure to Obtain or Consult Defense Experts</u>

Petitioner contends that his counsel's failure to either retain or consult an accident reconstruction expert or obtain an expert analysis of petitioner's blood sample constituted ineffective assistance of counsel.  Generally, counsel's failure to call a witness will not amount to prejudice "because allegations of what [a] witness would have testified are largely speculative." <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2002).  However, counsel's failure to obtain or consult an expert witness is prejudicial when expert testimony was so critical to the petitioner's conviction that there is a reasonable likelihood that testimony from a defense expert would have changed the outcome of the case.  See <u>Yohey v. Collins</u>, 985 F.2d 222, 228 (5th Cir. 1993); <u>see also</u> <u>Dugas v. Coplan</u>, 428 F.3d 317, 334-41 (1st Cir. 2005) (finding that counsel's failure to consult with an expert may be prejudicial when case against petitioner lacks eyewitness testimony and rests mainly on questionable expert testimony); <u>Ashker v. Class</u>, 152 F.3d 863, 876 (8th Cir. 1998) (holding habeas petitioner was not prejudiced by counsel's failure to obtain an expert witness

---

[37]<u>Id.</u> at 15.

[38]<u>Id.</u>

where petitioner made no showing that testimony from an expert witness would have exculpated him).

Petitioner cites Ex parte Briggs, 187 S.W.3d 458 (Tex. Crim. App. 2005), as authority that his counsel's failure to consult an expert witness was prejudicial to his case.   The petitioner in Ex parte Briggs had pled guilty to killing her infant son and was sentenced to seventeen years in prison.  Id. at 462-63.  She filed an application for a writ of habeas corpus claiming that her counsel's failure to consult with an expert regarding the cause of the death of petitioner's infant son constituted ineffective assistance.  Id. at 468.  Other than the petitioner, there were no eyewitnesses that could explain how the infant died.   Id. at 461-63.  The entire basis of the state's case against the petitioner was the report of an inexperienced pathologist, which concluded that the infant's death was a homicide but nonetheless urged the state to obtain a second opinion.  Id. at 463 & n.9.  Neither the state nor the petitioner's trial counsel ever consulted a different expert.  Id. at 463.  The petitioner's habeas counsel, however, consulted four medical experts all of whom concluded with a high degree of certainty that petitioner's son died of natural causes, not homicide.  Id. at 461-63.  Consequently, the court vacated the petitioner's guilty plea because, given the doctors' findings and the questionable findings of the state's only expert, there was a reasonable likelihood that petitioner would not have pled guilty to the charges had petitioner's trial counsel consulted an expert.

Id. at 469-70.  This decision is fully consistent with the rule in Yohey and bears little resemblance to petitioner's case.

Here, expert testimony was not the sole or even primary basis for the state's case against petitioner.  To the contrary, the state could have relied solely on the testimony of its several nonexpert witnesses, such as Messen, Bradshaw, and Heiman, to convict petitioner.  Each of these witnesses testified that petitioner was intoxicated.[39]  Both Messen and Bradshaw testified that petitioner drove at a high rate of speed;[40] and Messen testified that she believed that the alcohol petitioner consumed had affected his ability to function both mentally and physically.[41] The testimony of these three witnesses alone was sufficient to convict petitioner.  Cf. Hale v. State, 194 S.W.3d 39, 42-43 (Tex. Crim. App. 2006).  Thus, the state's expert witnesses were not the primary source of evidence against petitioner as was the expert in Ex parte Briggs, but served mainly to corroborate what the state's lay witnesses had already established.

Even if, as petitioner contends, a defense accident-reconstruction expert would have testified that petitioner was not traveling as fast as the state's expert supposed and that Alford

---

[39]See Reporter's Record, Docket Entry No. 18, Vol. 4 pp. 46-47, 64-67, 69-70, 77, 107.

[40]Id. at 46-47, 69-70.

[41]Id. at 77.

-14-

had caused the accident,[42] this testimony does not create a reasonable likelihood that the result of petitioner's trial would have been different had his expert testified.  Petitioner's trial counsel made these points during cross-examination.[43]  As for counsel's failure to obtain a defense analysis of petitioner's blood sample, petitioner has provided no evidence that a defense analysis of petitioner's blood sample would have differed from the state's analysis.  The court concludes that petitioner has not established that he was prejudiced from defense counsel's failure to obtain or consult an expert.

2.   <u>Admission of the State's Blood-Alcohol Analysis</u>

Petitioner argues that his counsel had a duty to object to the admissibility of the state's blood-alcohol testing when, on the day of trial, one of the vials containing petitioner's blood appeared broken.[44]  Trial counsel's decision not to object is reasonable if the objection would be futile.  See <u>Murray v. Maggio</u>, 736 F.2d 279, 283 (5th Cir. 1984).  Here, such an objection by counsel would have been futile because testimony at trial established that the vial was not broken or compromised when it reached the lab for testing,

---

[42]Petitioner's Response and Objections to Respondent Quarterman's Answer with Brief in Support, Docket Entry No. 32, pp. 51-57.

[43]See, e.g., Reporter's Record, Docket Entry No. 18, Vol. 4 pp. 33, 48-49, 94; Vol. 5 pp. 28-30.

[44]<u>Id.</u> at 60-61.

and that the vial's condition at trial had no effect on the sample's analysis.[45]   Petitioner has produced no evidence to the contrary to suggest that at the time of trial his counsel knew or should have known that this testimony was false or incorrect. Instead, petitioner speculates that if the vial was broken before testing, the results could have been affected and this possibility should have led his attorney to object.[46]   However, petitioner's speculation is insufficient to establish that his counsel's conduct was deficient.

###   3.   Failure to Investigate

Petitioner claims that his counsel was ineffective for failing to properly investigate petitioner's case and interview witnesses must also fail.  To establish a claim of ineffective assistance of counsel based on a failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." Miller, 420 F.3d at 361.  The only failure petitioner complains of is defense counsel's failure to consult an expert before trial.[47]   As explained above, petitioner has not shown that had his counsel consulted an expert the outcome of the trial would have been different.

_____

[45]Reporter's Record, Docket Entry No. 18, Vol. 5 p. 110.

[46]Petitioner's  Response  and  Objections  to  Respondent Quarterman's Answer with Brief in Support, Docket Entry No. 32, pp. 58-60.

[47]Id. at 67-68.

4.   <u>Failure to Object to Testimony at Sentencing</u>

Petitioner claims that his counsel was ineffective for failing to object to the admission of Lieutenant Crais's testimony during the punishment phase of his trial.[48]  During the punishment phase of petitioner's trial, Lieutenant Crais testified that in 1986 he had investigated a fatal automobile accident that involved petitioner.   Lieutenant Crais testified that he interviewed petitioner several hours after the accident at a hospital, and that during the interview he smelled alcohol on petitioner.  Lieutenant Crais acknowledged that the analysis of a blood sample taken from petitioner at the time of the interview, but several hours after the accident, failed to confirm that petitioner was intoxicated. Notwithstanding the analysis of petitioner's blood, Lieutenant Crais testified that his investigation of the accident led him to conclude that petitioner was driving when the fatal accident occurred, that petitioner was intoxicated while driving, and that petitioner's intoxicated state was at least one cause of the accident.  Lieutenant Crais further testified that petitioner was subsequently charged with criminal negligent homicide, which was later reduced to reckless conduct.[49]

Under Texas law the state may introduce during the punishment phase any "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the

---

[48]<u>Id.</u> at 64.

[49]Reporter's Record, Docket Entry No. 18, Vol. 6 pp. 24-31.

defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." Tex. Code Crim Proc. Ann. art. 37.07, § 3.   Accordingly, Lieutenant Crais's testimony concerning petitioner's prior bad acts was admissible for purposes of punishment.   Thus, there was nothing unreasonable per se about trial counsel's failure to object to the admission of this testimony.

That petitioner's counsel could have found some reason to object to the testimony does not make his decision not to object unreasonable for purposes of the ineffective assistance of counsel. In this context, petitioner must show that "[s]olid, meritorious arguments based on directly controlling precedent" imposed upon his counsel a duty to object.  United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003).  Petitioner has not presented any arguments or precedents that would impose such a duty, and this court has not found any.  Cf. Henderson v. State, 29 S.W.3d 616, 624-27 (Tex. App. 2000); Standerford v. State, 928 S.W.2d 688, 692-93 (Tex. App. 1996).  Thus, counsel's decision not to object to the admission of Lieutenant Crais's testimony was not unreasonable.

5.  Competent Advice Regarding State's Plea Offer

Petitioner contends that his counsel's advice concerning the state's plea offer was ineffective because his counsel induced him to believe that the state had no case against petitioner, and that

-18-

if petitioner went to trial the jury would acquit him.[50]   In an affidavit submitted as part of petitioner's state habeas application petitioner's counsel stated that he met with petitioner several times and that every time they met petitioner refused to consider a plea bargain.[51]   Petitioner's counsel further stated that he never instructed petitioner to refuse the state's plea offer, and that he advised petitioner of the full range of punishment if petitioner was convicted at trial.[52]   The state habeas court accepted each of these statements as true and credible.[53]   This court must also accept these facts as true unless petitioner can prove otherwise by clear and convincing evidence.   See 28 U.S.C. § 2254(e)(1).   Petitioner has presented no evidence, let alone clear and convincing evidence, to substantiate his claims. Therefore, the court rejects petitioner's claim.

## B.   Petitioner's Prosecutorial Misconduct Claims

Petitioner raised several claims of prosecutorial misconduct in his petition but provided no argument or evidence to substantiate those claims.   Instead, he asks for more time to

---

[50]Petitioner's Response and Objections to Respondent Quarterman's Answer with Brief in Support, Docket Entry No. 32, pp. 65-67.

[51]Ex parte Sixta, Application No. 60,547-03, Affidavit of Michael E. Barrow, pp. 79-83.

[52]Id.

[53]Id. at 95.

review the record and make an argument.[54]   Petitioner filed his
petition over nine months ago.[55]   Respondent filed his Answer with
Brief in Support five months ago.[56]   The court will not afford
petitioner additional time to formulate an argument because the
court concludes that additional time will not allow petitioner to
state valid prosecutorial misconduct claims.

To be entitled to relief under a claim of prosecutorial
misconduct, petitioner must show that the alleged "misconduct [wa]s
so pronounced and persistent that it permeates a trial's atmosphere
and casts serious doubt on the correctness of the jury's verdict."
United States v. Mulderiq, 120 F.3d 534, 542 (5th Cir. 1997).   None
of petitioner's four allegations of prosecutorial misconduct make
such a showing.

Petitioner has failed to establish that the prosecution
introduced false testimony at trial when it allowed Alford to
testify that the victim, Ms. Coble, warned Alford of the impending
collision.[57]   To prevail on this claim petitioner must prove that

---

[54]Petitioner's Response and Objections to Respondent
Quarterman's Answer with Brief in Support, Docket Entry No. 32,
p. 69.

[55]Petition for a Writ of Habeas Corpus by a Person in State
Custody, Docket Entry No. 1, p. 1.

[56]Respondent Quarterman's Answer with Brief in Support, Docket
Entry No. 17.

[57]Petition for a Writ of Habeas Corpus by a Person in State
Custody, Docket Entry No. 1, p. 17.

Alford's testimony was false, that the prosecution knew the testimony was false, and that the testimony was material. United States v. Mason, 293 F.3d 826, 828 (5th Cir. 2002). Petitioner has failed to prove any of these three elements.

Petitioner's allegation that the prosecutor committed misconduct by issuing dual indictments also lacks merit. Petitioner has provided no evidence or argument explaining how that decision amounts to prosecutorial misconduct or prejudiced the outcome of petitioner's case. Moreover, the court has found no authority to support such an allegation.

Petitioner has also failed to establish that the prosecutor committed misconduct during her closing argument. To prevail on a claim of improper argument, petitioner must show that the prosecutor's comments were so pervasive and prejudicial that they violated petitioner's substantive rights. United States v. Insaulgarat, 378 F.3d 456, 461 (5th Cir. 2004). During her closing argument, the prosecutor made the following statement to the jury: "I ask you to find Daniel Sixta guilty of intoxication manslaughter. And when you come back with that guilty verdict, you won't be telling that man anything he didn't already know."[58] Petitioner argues that the statement "when you come back with that guilty verdict" constitutes prosecutorial misconduct, but has not established how this statement, when viewed in context, prejudiced

_____

[58]Reporter's Record, Docket Entry No. 18, Vol. 5 p. 163.

his substantive rights.   Examined in context the statement was likely an allusion to the testimony of Heiman, who testified that just before she drew petitioner's blood, petitioner held out his arm and said:  "I guess my life is over."[59]  By alluding to evidence fairly admitted at trial, the prosecutor has not committed misconduct.

Finally, petitioner has provided no proof that the prosecutor told petitioner's counsel that if petitioner made bond the state would file additional charges.[60]  Therefore, the claim is conclusory and must be denied.  See Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that conclusory allegations are insufficient to raise a constitutional claim in federal habeas proceedings).

## V.  Remaining Motions

With his Response and Objections to Respondent's Answer with Brief in Support petitioner filed several motions on matters this court has already ruled on:  Motion for Reconsideration of the Court's September 19, 2007 Order; and Motion for Leave to File Amendment and Supplement to Habeas Petition; and Motion to Stay and "Abey" [sic] Habeas Proceeding; and Motion for Extension of Time to File Second Amended Habeas Petition; and Motion for Extension of

---

[59]Reporter's Record, Docket Entry No. 18, Vol. 4 p. 109.

[60]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 17.

Time to File Response and Objections to Answer.[61]  For the reasons
explained in its September 19, 2007, Memorandum Opinion and Order
(Docket Entry No. 30), the court **DENIES** petitioner's Motion for
Reconsideration.  In its June 11, 2007, Order (Docket Entry No. 22)
the court denied petitioner's Motion to Stay and Abey Habeas
Proceeding.  For the reasons explained above, see supra Part IV.B,
the court **DENIES** petitioner's Motions for Extension of Time.

## VI.   Conclusion and Order

Based on the foregoing, Respondent Quarterman's Motion for
Summary Judgment (Docket Entry No. 17) is **GRANTED**, and petitioner's
Petition for a Writ of Habeas Corpus by a Person in State Custody
(Docket Entry No. 1) is **DENIED**.  Petitioner's Motion for
Reconsideration of the Court's September 19, 2007 Order; Motion for
Leave to File Amendment and Supplement Habeas Petition; Motion to
Stay and Abey Habeas Proceeding; Motion for Extension of Time to
File Second Amended Habeas Petition; and Motion for Extension of
Time to File Response and Objections to Answer (Docket Entry
No. 31) are **DENIED**.

**SIGNED** at Houston, Texas, on this 2nd day of November, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[61]See Docket Entry No. 31.

-23-